1
2
3
4
5
6
7
8
9
10
11

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

12   JAIME IGNACIO ESTRADA,                )   No. C 10-4832 LHK (PR)
                                           )
13            Plaintiff,                   )   ORDER GRANTING DEFENDANT'S
                                           )   MOTION FOR SUMMARY
14      vs.                                )   JUDGMENT; DENYING
                                           )   PLAINTIFF'S MOTION FOR
15   C. MALO-CLINES,                       )   SUMMARY JUDGMENT
                                           )
16            Defendant.                   )   (Docket Nos. 42, 48, 54, 56, 58, 59, 60)
                                           )
17   _____

18       Plaintiff, proceeding *pro se*, filed a civil rights complaint[1] pursuant to 42 U.S.C. § 1983

19   against Nurse Practitioner C. Malo-Clines ("Defendant") at Pelican Bay State Prison ("PBSP").

20   Plaintiff alleges that Defendant was deliberately indifferent to his serious medical needs, in

21   violation of the Eighth Amendment.

22       Defendant has moved for summary judgment.[2]  Plaintiff has filed an opposition (and two

23   addendums to the opposition), and Defendant has filed a reply.  Plaintiff has also filed a motion

24

25       [1]  Plaintiff's motion for leave to amend his complaint (docket no. 42) to include damages
26   is GRANTED.

27       [2]  Plaintiff's motion to strike Defendant's Exhibits Y and Z (docket no. 54) is DENIED as
28   unnecessary.  The Court did not consider Exhibits Y and Z in its analysis of the motions for
     summary judgment.

Order Granting Defendant's Motion For Summary Judgment; Denying Plaintiff's Motion for Summary Judgment
G:\PRO-SE\SJ.LHK\CR.10\Estrada832msj.wpd

1   for leave to file a surreply, along with a surreply.[3]  Defendants have also filed a supplemental

2   reply to Plaintiff's supplemental opposition.  Plaintiff has also filed a motion for summary

3   judgment.[4]  Defendant has filed an opposition, and Plaintiff has filed a reply (and addendum in

4   support of the reply).

5       Having carefully considered the papers submitted, the Court hereby GRANTS

6   Defendant's motion for summary judgment, and DENIES Plaintiff's motion for summary

7   judgment, for the reasons set out below.

8                                          **BACKGROUND**

9       Plaintiff filed this action, alleging that Defendant was deliberately indifferent to his

10  serious medical needs.  At the time of the underlying events, Plaintiff was a 37-year old prisoner

11  who claimed that he had been suffering from degenerative disc disease, osteoarthritis, and

12  sciatica since 2006.  (Compl. at 3, 7.)  Since January 2010, Plaintiff has complained to the

13  medical staff of severe pain, and ineffective pain medication.  (*Id.* at 3.)  Plaintiff alleges that his

14  complaints have gone ignored.  (*Id.* at 3.)  According to Plaintiff, Defendant engaged in

15  unqualified medical practices by refusing to have him be seen by a qualified specialist.  (Opp. at

16  7, 9.)  Plaintiff further alleges that he suggested more effective medications to treat his pain, and

17  Defendant denied the requests, leaving Plaintiff to suffer the consequences.  (*Id.* at 8.)  Plaintiff

18  also complains that Defendant refused to accommodate his requests for a lower bunk chrono.

19  (*Id.* at 9.)  In response, Defendant argues that she provided all treatment that was medically

20  necessary, and that Plaintiff's allegations amount to no more than a difference of opinion.

21      The following facts are viewed in the light most favorable to Plaintiff, and are undisputed

22  unless otherwise indicated.

23      Since March 2006, Defendant has been a nurse practitioner at PBSP.  (MSJ, Appendix,

24  Ex. A, Decl. Malo-Clines ("Decl. Malo-Clines.") at ¶ 1.)  She also sits on PBSP's Pain

25  Committee, made up of medical staff who meet to address issues that arise during treatment of

26

27      [3]  Plaintiff's motion for leave to file a surreply (docket nos. 59, 60) is GRANTED.

28      [4]  Plaintiff's motion to amend/correct his motion for summary judgment (docket no. 58)
     is GRANTED.

1    inmates at PBSP regarding pain management. (*Id.*)

2    On December 7, 2009, Plaintiff complained of severe pain and requested Tylenol 3

3    ("T3"). (Compl. at 7.)  Plaintiff had previously been prescribed T3, but the prescription was

4    discontinued. (*Id.*)  Plaintiff submitted complaints on December 11, 2009, January 10, 2010, and

5    January 13, 2010. (*Id.*)  On January 15, 2010, Nurse Abad tended to Plaintiff, and noted that

6    Plaintiff had been waiting to see a doctor for over one month for severe pain. (*Id.*)  Nurse Abad

7    also noted that Plaintiff's current pain medication was not effective. (*Id.* at 7-8.)  Nurse Abad

8    gave Plaintiff regular Tylenol. (*Id.* at 8.)

9    On January 17, January 19, and January 21, 2010, Plaintiff submitted complaints that he

10   was not receiving his medication refills, was in severe pain, and requested a doctor. (*Id.*)  On

11   January 25, 2010, Nurse Abad saw Plaintiff, and noted that the doctor had only ordered regular

12   Tylenol for him, although she recognized that Plaintiff responded best to T3 and the current

13   medications were not effective against Plaintiff's pain. (*Id.*)

14   On January 27, 2010, Defendant attended to Plaintiff for a chronic care appointment

15   regarding his chronic lower back pain, high blood cholesterol, Parkinson's disease, allergic

16   rhinitis, tinnitus, and conjunctivitis. (Decl. Malo-Clines at ¶ 5.)  At that time, Plaintiff reported

17   to Defendant that his back pain was limited to his lower back, and that his current medication of

18   salsalate (a non-steroidal anti-inflammatory medication) was ineffective to relieve his pain. (*Id.*

19   at ¶ 6.)  After examining Plaintiff, Defendant concluded that Plaintiff's back pain was axial, i.e.,

20   that Plaintiff had lower back pain that did not travel into other areas of the body. (*Id.* at ¶ 7.)

21   Based on Defendant's medical opinion, the treatment for axial back pain is generally non-

22   surgical, conservative treatment, i.e., a combination of physical therapy and/or exercise and

23   stretching; applications of ice/heat packs; and pain relief medication. (*Id.* at ¶ 8.)  After

24   Defendant's examination, she discussed with Plaintiff the appropriate medications. (*Id.* at ¶ 9.)

25   They reviewed different exercises and activities that Plaintiff could do to treat his back pain.

26   (*Id.*)  Defendant encouraged moderate activity; suggested that Plaintiff borrow a particular yoga

27   book from the library; and prescribed naproxen, a non-steroidal anti-inflammatory drug, to be

28   taken as needed. (*Id.*; Appendix, Ex. D.)  Defendant also treated his non-back pain symptoms.

1    (Decl. Malo-Clines at ¶ 10; Appendix, Ex. E.)

2          On February 1 and February 6, 2010, Plaintiff submitted complaints of severe pain and

3    ineffective pain medication.  (Compl. at 8.)  On February 10, 2010, Plaintiff submitted another

4    complaint indicating that he was experiencing impaired mobility.  (*Id.*)  In response to his

5    complaint, Plaintiff was given regular Tylenol.  (*Id.*)  On February 13, 2010, Plaintiff requested a

6    bottom bunk chrono because it was painful for him to jump up and down from a top bunk bed.

7    (*Id.*)

8          On February 18, 2010, Defendant examined Plaintiff and confirmed that the medication

9    Plaintiff was receiving -- naproxen -- was not effective in lowering his pain, and that Plaintiff's

10   left leg felt heavy and periodically went numb if Plaintiff stood for more than thirty minutes.

11   (*Id.*; Decl. Malo-Clines at ¶ 11; Appendix, Ex. F.)  Plaintiff showed Defendant some paperwork

12   for Inmate Torres, showing that Torres had been given methadone for the same chronic pain that

13   Plaintiff was experiencing, and suggested to Defendant that he also receive methadone.  (Compl.

14   at 8; Decl. Malo-Clines at ¶ 11.)  Defendant asked Plaintiff whether he had tried to do yoga, as

15   recommended, and Plaintiff offered no explanation after stating that he did not.  (Decl. Malo-

16   Clines at ¶ 12.)  After completing her examination of Plaintiff, Defendant noted that there had

17   been no change in the condition of his back from the previous month's visit.  (*Id.* at ¶ 13.)

18   Defendant repeated her recommendations that Plaintiff be active, borrow the yoga book from the

19   library, and utilize alternate pain control methods.  Defendant changed Plaintiff's pain

20   medication prescription to salsalate, and increased his prescription of tegretol.  (*Id.* at ¶ 13;

21   Appendix, Ex. G.)  Defendant also denied Plaintiff's request for a bottom bunk chrono.  (Compl.

22   at 9.)  Defendant reasoned that Plaintiff's 2009 request for the same had been denied because his

23   condition did not warrant such a chrono then, and Plaintiff's condition still did not warrant such

24   a chrono.  (Decl. Malo-Clines at ¶ 16.)  Defendant consulted with Chief Medical Officer Dr.

25   Sayre, and Dr. Sayre agreed that Plaintiff's condition did not warrant a bottom bunk chrono at

26   that time.  (*Id.* at. ¶ 17.)

27         On February 22, 2010, Defendant saw Plaintiff in response to an administrative appeal

28   that Plaintiff had filed in January 2010, requesting methadone and a rheumatoid arthritis test.

1 (Decl. Malo-Clines at ¶ 18.)  Based on her medical opinion, Defendant observed no changes in

2 Plaintiff's condition that would warrant a lower bunk chrono or prescription for methadone, and

3 denied both.  (*Id.*; Compl. at 9.)  Nonetheless, Defendant increased Plaintiff's prescription of

4 salsalate and tegretol to treat his pain.  (Decl. Malo-Clines at ¶ 18; Appendix, Ex. H.)

5 On February 25, 2010, Plaintiff complained of severe pain, requested a chrono for a

6 lower bunk, complained that he could not stand for longer than thirty minutes, and complained

7 that the pain medication was ineffective.  (Compl. at 9.)  On March 10, 2010, Plaintiff

8 complained of back spasms and lower back pain, requested a lower bunk, and complained that

9 his pain medication was ineffective.  (*Id.*)  Plaintiff was given Tylenol.  (*Id.*)  On April 6, April

10 11, and April 12, 2010, Plaintiff complained of severe pain.  (*Id.*)  On April 20, 2010, Defendant

11 renewed Plaintiff's order for salsalate and tegretol.  (Decl. Malo-Clines at ¶ 19; Appendix, Ex.

12 I.)

13 On April 26, 2010, Plaintiff hurt his back jumping down from the top bunk and was

14 unable to get up.  (Compl. at 9.)  Plaintiff was transported by wheelchair to the clinic.  (*Id.*)

15 Nurse Abad asked Defendant whether Plaintiff could receive Tylenol for his pain, in light of his

16 other prescribed medications, and Defendant approved it.  (Decl. Malo-Clines at ¶ 20.)  Plaintiff

17 reported his pain to be a 10 out of 10, and Defendant directed that Plaintiff receive the Tylenol,

18 and directed Plaintiff to move his mattress to the floor.[5]  (Compl. at 9.)

19 On April 27, 2010, Plaintiff told Defendant that his back "went out" recently, and he was

20 taken to the clinic in a wheelchair.  (Decl. Malo-Clines at ¶ 22.)  Defendant examined him, and

21 discovered that Plaintiff had no spasms, his gait and straight-leg tests were normal, and Plaintiff

22 was able to move off the examination table with ease.  (*Id.*)  Defendant concluded that Plaintiff's

23 back pain was still axial and should be treated with physical activity and moderate medication.

24 (*Id.*)  Defendant gave Plaintiff ibuprofen, which had previously been ineffective.  (Compl. at 9.)

25 Defendant believed that T3, previously prescribed by the dental office, was inappropriate.  (Decl.

26

27 [5] Defendant disputes that she gave the order to place Plaintiff's mattress on the floor.
(Decl. Malo-Clines at ¶ 21.)  She explains that she was not consulted about the appropriateness
28 of such an order, and would not have recommended such treatment because the effectiveness is
inconclusive.  (*Id.*)

1   Malo-Clines at ¶ 22.)  Defendant and Plaintiff discussed treatment and trying sulindac, a non-
2   steroidal, anti-inflammatory medication, for pain control.  (*Id.*; Appendix, Exs. J, K, L.)

3        On April 28, April 29, May 4, May 7, May 8, May 9, and May 10, 2010, Plaintiff
4   complained of severe pain but was denied "proper" pain relief.  (Compl. at 9-10.)  Nurse Abad
5   reported to Defendant that she had examined him on May 10, 2010, in response to Plaintiff's
6   back pain and request for a bottom bunk, and observed no changes in Plaintiff's condition.
7   (Decl. Malo-Clines at ¶ 23.)  On May 11, and May 12, 2010, Plaintiff again requested, and was
8   denied, a bottom bunk chrono.  (Compl. at 10.)

9        On May 14, 2010, Plaintiff complained of severe daily pain due to Defendant's
10  discontinuation of all pain medication except for regular Tylenol.  (Compl. at 10.)  On May 16,
11  2010, Plaintiff submitted a request for medical intervention because of the severe pain he was
12  experiencing.  (*Id.*)  Thereafter, Plaintiff continued to complain of pain, as well as difficulty
13  standing and lying down on May 19, May 21, and May 26, 2010.  (*Id.* at 10-11.)

14       On May 26, 2010, Defendant examined Plaintiff and determined that his back pain was
15  still axial.  (Decl. Malo-Clines at ¶ 25.)  Defendant told Plaintiff to stop requesting Tylenol from
16  the nurses at the clinic, and refrain from buying Tylenol, so that Defendant could monitor the
17  effectiveness of the prescription medication.  (*Id.*)  Defendant discussed with Plaintiff the
18  reasons that he did not qualify for a bottom bunk chrono.  (*Id.*)  Defendant prescribed sulindac
19  for pain control, and ordered x-rays to rule out fractures.  (*Id.*; Appendix, Exs. M, N.)  On June
20  17, 2010, after Plaintiff requested discontinuing sulindac and requested Tylenol, Defendant
21  complied because Plaintiff indicated the Tylenol was more effective.  (Decl. Malo-Clines at ¶
22  26.)

23       On July 13, 2010, Defendant again examined Plaintiff, and her findings were consistent
24  with her initial findings that Plaintiff's back condition was axial, and should be treated with
25  conservative management, i.e., physical therapy and moderate medication.  (*Id.* at ¶ 27.)
26  Defendant again recommended physical activity, and again suggested that Plaintiff borrow the
27  yoga book from the library.  (*Id.*)  Defendant renewed the orders for Tylenol and sulindac, as she
28  believed the sulindac could be effective if Plaintiff took it as prescribed.  (*Id.*; Appendix, Exs. Q,

R.)

On September 22, 2010, Plaintiff submitted an inmate request complaining of severe pain and ineffective pain medication. (Compl. at 11.) The following day, a psychiatrist came to Plaintiff's cell because a mental evaluation was ordered for Plaintiff in response to his complaints of severe pain. (*Id.*)

On September 29, 2010, Plaintiff stated that he had been receiving his Tylenol prescription, but he was returning the Tylenol and sulindac because they were ineffective. (Decl. Malo-Clines at ¶ 28.) Defendant ordered a increase in Plaintiff's Tylenol prescription in an effort to ease Plaintiff's pain. (*Id.*; Appendix, Exs. S, T.) On October 8, 2010, Defendant examined Plaintiff during a sick call, and determined that Plaintiff's back pain was still axial. (Decl. Malo-Clines at ¶ 30.) Defendant prescribed Tylenol and salsalate for the pain. (*Id.*; Appendix, Exs. U, V.)

On September 10, 2010, Plaintiff filed a state habeas petition in the Del Norte County Superior Court. (Plaintiff's Req. for Jud. Not., Ex. A at ¶ 2.) In the state action, the Superior Court ordered the California prison medical receiver to file a return to the petition, which return was filed on or about November 18, 2010. (*Id.*, Ex. A.) In his return, the receiver concluded that Plaintiff's condition was not severe, and that California Department of Corrections and Rehabilitation ("CDCR") medical staff had provided Plaintiff with proper care. (*Id.* at ¶ 17.) Specifically, the receiver concluded that examination by Dr. Christoph Beinsenherz revealed that Plaintiff had normal posture and gait; mild tenderness and mildly restricted mobility of the lumbar area; and no neurological deficits such as weakness or numbness in the lower extremities. (*Id.* at ¶ 15.) The receiver further noted that Plaintiff "should not have a constant need for opiates such as [T3], which can be addictive." (*Id.*) Nevertheless, "to ensure [Plaintiff']'s health care needs continue[d] to be fully and properly addressed prospectively," the receiver adopted the Corrective Action Plan ("CAP") proposed by Dr. Beisenherz. (*Id.* at ¶ 18.) The CAP included a consultation with a specialist in physiatry/pain management. (*Id.*) Thereafter, on or about January 13, 2011, Plaintiff was evaluated by G. Williams, M.D. ("Dr. G. Williams.") (*Id.*, Ex. D.)

1    Dr. G. Williams noted that the comprehensive radiologic studies of Plaintiff's lumbar
2    spine were negative for spinal mediated pain.  (*Id.*, Ex. D at 3.)  He did, however, diagnose
3    "chronic myofascial related pains causing low back pain."  (*Id.*)  According to Dr. G. Williams,
4    "[l]ack of an adequate stretching program ha[d] contributed to [Plaintiff's] condition."  (*Id.*)  He
5    recommended a physical therapist evaluate Plaintiff's exercise program "to ensure that he is not
6    performing it incorrectly."  (*Id.*)  In his opinion, nonsteroidal anti-inflammatory drugs and
7    Tylenol were appropriate medications to manage pain.  (*Id.* at 4.)  In the event Plaintiff's pain
8    worsened, Dr. G. Williams recommended "trigger point injections" during "painful episodes."
9    (*Id.*)

**LEGAL STANDARD**

11    Summary judgment is proper where the pleadings, discovery and affidavits demonstrate
12    that there is "no genuine issue as to any material fact and that the moving party is entitled to
13    judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect
14    the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute
15    as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a
16    verdict for the nonmoving party.  *Id.*

17    The party moving for summary judgment bears the initial burden of identifying those
18    portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine
19    issue of material fact.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  Where the moving
20    party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no
21    reasonable trier of fact could find other than for the moving party.  But on an issue for which the
22    opposing party will have the burden of proof at trial, the moving party need only point out "that
23    there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.

24    Once the moving party meets its initial burden, the nonmoving party must go beyond the
25    pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a
26    genuine issue for trial."  Fed. R. Civ. P. 56(e).  The Court is only concerned with disputes over
27    material facts and "factual disputes that are irrelevant or unnecessary will not be counted."
28    *Anderson,* 477 U.S. at 248.  It is not the task of the Court to scour the record in search of a

1   genuine issue of triable fact.  *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The

2   nonmoving party has the burden of identifying, with reasonable particularity, the evidence that

3   precludes summary judgment.  *Id.*  If the nonmoving party fails to make this showing, "the

4   moving party is entitled to judgment as a matter of law."  *Celotex Corp.*, 477 U.S. at 323.

5        The Court's function on a summary judgment motion is not to make credibility

6   determinations or weigh conflicting evidence with respect to a disputed material fact.  *See T.W.*

7   *Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The evidence

8   must be viewed in the light most favorable to the nonmoving party, and the inferences to be

9   drawn from the facts must be viewed in a light most favorable to the nonmoving party.  *See id.* at

10  631.

11                                      **DISCUSSION**

12  A.    Request for Admissions

13       As an initial matter, Plaintiff requests that the Court sanction Defendant for perjury.

14  Plaintiff asserts that he served counsel for Defendant with requests for admissions ("RAP") in

15  May 2011, but he never received any substantive response to those requests until Defendant

16  served her motion for summary judgment on February 16, 2012.  Counsel for Defendant avers

17  that he responded to Plaintiff's RAP on May 31, 2011, and attaches a declaration stating the

18  same.  (MSJ, Appendix, Exs. AA at ¶ 5, BB.)  Plaintiff contends that Defendant is lying because

19  the prison mail log shows no communication being received from defense counsel in June or

20  July of 2011.  (Docket No. 51, Addendum, Ex. A.)  Despite Plaintiff's failure to receive the

21  response to his RAP, the fact that the prison has no record of receiving the documents does not

22  necessarily demonstrate that Defendant failed to send them.  In light of defense counsel's

23  assertion, under penalty of perjury, that he caused the responses to be mailed on May 31, 2011,

24  and a copy of the certificate of service indicating the same, the Court cannot conclude that

25  Defendant failed to timely respond to Plaintiff's RAP.  Thus, the Court denies Plaintiff's request

26  for sanctions.

27       Alternatively, even assuming that Defendant failed to respond to Plaintiff's RAP, the

28  Court would permit Defendant to withdraw admissions.  When a party fails to timely respond to

1   requests for admission, those requests are automatically deemed admitted.  *See* Fed. R. Civ. P.

2   36(a).  "Any matter admitted under this rule is conclusively established unless the court on

3   motion permits withdrawal or amendment of the admission."  Fed. R. Civ. P. 36(b).  Withdrawal

4   or amendment is appropriate when (1) presentation of the merits of the action is furthered, and

5   (2) the party who obtained the admission will not be prejudiced in maintaining the action or

6   defense on the merits.  *See* Fed. R. Civ. P. 36(b).  "[A] district court must specifically consider

7   both factors under the rule before deciding a motion to withdraw or amend admissions."  *Conlon*

8   *v. United States*, 474 F.3d 616, 622 (9th Cir. 2007).  Rule 36(b), however, is permissive with

9   respect to withdrawal.  *Id.* at 621.

10        "'The first half of the test in Rule 36(b) is satisfied when upholding the admissions would

11   practically eliminate any presentation of the merits of the case.'"  *Conlon*, 474 F.3d at 622

12   (quoting *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995)).  Here, some of the

13   admissions go directly to core issues in the litigation, including the ultimate question of liability.

14   (MSJ, Appendix, Ex. BB.)  Thus, the first prong of the Rule 36(b) test is met.

15        As to the second prong, Plaintiff has the burden of establishing that he will be prejudiced

16   if the admissions are withdrawn.  *Conlon*, 474 F.3d at 622.  "The prejudice contemplated by

17   Rule 36(b) is 'not simply that the party who obtained the admission will now have to convince

18   the factfinder of its truth.'"  *Hadley*, 45 F.3d at 1348 (quoting *Brook Village North Associates v.*

19   *Gen. Elec. Co.*, 686 F.2d 66, 70 (1st Cir. 1982)).  "Rather, it relates to the difficulty a party may

20   face in proving its case, e.g., caused by the unavailability of key witnesses, because of the

21   sudden need to obtain evidence with respect to the questions previously deemed admitted."  *Id.*

22   (internal quotation marks omitted).  A lack of discovery, without more, does not constitute

23   prejudice.  *Conlon*, 474 F.3d at 624.  Prejudice is more likely to be found where the motion for

24   withdrawal is made during trial or when a trial is imminent.  *See id.* at 624; *Hadley*, 45 F.3d at

25   1348.  Plaintiff sets forth no argument that he would be prejudiced if the admissions are

26   withdrawn.

27        Accordingly, Plaintiff's motion for sanctions is DENIED, and the Court concludes that

28   none of the matters in the RAP are deemed admitted.

1    B.    Eighth Amendment Claim

2           Deliberate indifference to a prisoner's serious medical needs violates the Eighth

3    Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  A prison official violates the Eighth

4    Amendment only when two requirements are met: (1) the deprivation alleged is, objectively,

5    sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's

6    health or safety.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

7           A "serious" medical need exists if the failure to treat a prisoner's condition could result

8    in further significant injury or the "unnecessary and wanton infliction of pain."  *Id.*  The

9    existence of an injury that a reasonable doctor or patient would find important and worthy of

10   comment or treatment; the presence of a medical condition that significantly affects an

11   individual's daily activities; or the existence of chronic and substantial pain are examples of

12   indications that a prisoner has a "serious" need for medical treatment. *McGuckin v. Smith*, 974

13   F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds, WMX Technologies, Inc. v.*

14   *Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

15          A prison official exhibits deliberate indifference when he knows of and disregards a

16   substantial risk of serious harm to inmate health.  *See Farmer*, 511 U.S. at 837.  The official

17   must both know of "facts from which the inference could be drawn" that an excessive risk of

18   harm exists, and he must actually draw that inference.  *Id.*  "A difference of opinion between a

19   prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983

20   claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).  Similarly, a claim of medical

21   malpractice or negligence is insufficient to establish a violation of the Eighth Amendment.

22   *McGuckin*, 974 F.2d at 1059.  In particular, a plaintiff's opinion that medical treatment was

23   unduly delayed does not, without more, state a claim of deliberate indifference.  *Shapley v.*

24   *Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).  Where doctors have

25   chosen one course of action and a prisoner-plaintiff contends that they should have chosen

26   another course of action, the plaintiff "must show that the course of treatment the doctors chose

27   was medically unacceptable under the circumstances, . . . and the plaintiff must show that they

28   chose this course in conscious disregard of an excessive risk to plaintiff's health." *Jackson v.*

1   *McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

2          1.      *Defendant's qualifications*

3          One of Plaintiff's complaints is that Defendant was not qualified to diagnose his

4   condition (Opp. at 9), and she prohibited him from seeing a specialist.  The fact that Defendant is

5   not a doctor, but a nurse practitioner, does not support an inference of deliberate indifference.

6   The constitution does not require that inmates be treated only by persons holding M.D. degrees.

7   Plaintiff does not identify any particular appropriate or necessary treatment that he did not

8   receive solely because Defendant did not have an M.D. degree.  Plaintiff also provides no

9   evidence suggesting that his back pain was beyond the expertise of a nurse practitioner, and the

10  evidence submitted actually points away from such a finding.

11         The above analysis is not altered by the fact that Plaintiff eventually saw an outside

12  specialist, Dr. G. Williams, who recommended trigger point injections.  At most, such a

13  recommendation evidences a difference of opinion regarding the type of pain treatment Plaintiff

14  should receive.  A mere "difference of medical opinion . . .  [is] insufficient, as a matter of law,

15  to establish deliberate indifference."  *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

16  Further, the diagnosis given by the specialist was consistent with that made by Defendant, and

17  trigger point injections were only recommended in the event the pain worsened.  For example, on

18  January 27, 2010, Defendant initially diagnosed Plaintiff with axial lower back pain (Decl.

19  Malo-Clines at ¶ 7), and confirmed that his back condition had not changed each time she

20  examined him (*id.* at ¶¶ 12-13, 18, 22, 23, 25, 27, 30).  Similarly, Dr. G. Williams assessed

21  Plaintiff's condition as "axial [lower back pain] with myofascial pain."  (Plaintiff's Req. for Jud.

22  Not., Ex. D at 3.)   Plaintiff submits no evidence indicating that his condition was in any manner

23  worsened as a result of his waiting for a specialist, let alone that the wait was the result of

24  Defendant's deliberate indifference to his condition.  Notably, because Plaintiff has not

25  presented evidence that he ever requested Defendant to refer him to a specialist -- or that she

26  denied that request -- Defendant certainly should not be found deliberately indifferent for failing

27  to do so.

28

2.      *Pain medication*

The parties do not dispute that Plaintiff's back pain is a serious medical condition. Assuming that this is a serious medical need, Plaintiff has failed to raise a triable issue of fact that Defendant acted with deliberate indifference.

The undisputed evidence shows that Plaintiff was diagnosed with degenerative disc disease, osteoarthritis, and sciatica since 2006.  Defendant examined Plaintiff on multiple occasions and provided him treatment for his medical needs.  As set forth above, Plaintiff was seen by Defendant at numerous medical visits for, *inter alia*, his low back pain between January 2010 and October 2010.  The evidence demonstrates that Defendant continuously assessed Plaintiff's symptoms, and recommended treatment according to his clinical presentation.

The undisputed evidence does not show or support a reasonable inference of deliberate indifference by Defendant in her treatment of Plaintiff's back pain.  Plaintiff was provided with medication in the forms of Tylenol, salsalate, naproxen, tegretol ibuprofen, and sulindac. Defendant also gave general advice regarding alternative methods to minimize his pain, such as yoga and physical therapy.  Although Plaintiff may have preferred a different treatment, his personal preference is not the measure for a federal constitutional violation.  Regarding Plaintiff's request for methadone, Defendant concluded that methadone was inappropriate for Plaintiff's condition, and the Medical Administrative Review committee, who approves and denies prescriptions for methadone, agreed with her assessment.  (Decl. Malo-Clines at ¶ 29.)  In addition, Plaintiff's own expert from his state habeas action also opined that Plaintiff was not a candidate for methadone.  (Plaintiff's Req. for Jud. Not., Ex. C at 2.)  Dr. G. Williams further agreed with Defendant that the appropriate medications for Plaintiff's pain management were non-steroidal anti-inflammatory drugs and Tylenol.  (Plaintiff's Req. for Jud. Not., Ex. D at 4.) Dr. G. Williams also agreed that opioids, such as T3, are not recommended.  (*Id.*)  On the other hand, Plaintiff has not presented any competent evidence that a prescription for methadone or T3, and/or a specialist were the only medically acceptable treatment options for his back pain. At most, he has shown a difference of opinion about the proper care for his complaints, and that does not amount to deliberate indifference.

1    Plaintiff cites to *Snow v. McDaniel*, 681 F.3d 978, 986 (9th Cir. 2012), to support his

2  claim.  However, the inmate in *Snow* presented evidence that specialists and his treating

3  physician recommended bilateral total hip surgery, and the surgery was repeatedly denied by a

4  Utilization Review Panel, who did not examine or treat the inmate.  The Ninth Circuit said,

5  "Based on the unchallenged medical records and inferences drawn in favor of [the inmate], a

6  reasonable jury could conclude that the decision of the non-treating, non-specialist physicians to

7  repeatedly deny the recommendations for surgery was medically unacceptable under all of the

8  circumstances." *Id.* at 988.  In Plaintiff's case, Defendant did not deny any recommended

9  treatment, nor did any medical professional declare that Defendant's course of action was

10  medically unacceptable.

11    Plaintiff fails to raise a triable issue of fact that Defendant's chosen course of action was

12  medically unacceptable under the circumstances, and chosen in conscious disregard of an

13  excessive risk to his health.  In sum, considering the evidence in the light most favorable to

14  Plaintiff, the Court finds Plaintiff fails to raise a triable issue of material fact as to whether

15  Defendant was deliberately indifferent to Plaintiff's serious medical needs regarding pain

16  medication and management.

17    3.    *Lower bunk chrono*

18    Plaintiff alleges that Defendant consistently refused to grant his request for a lower bunk

19  chrono.  Although Plaintiff has alleged that it was difficult for him to jump off and on the top

20  bunk bed, he has submitted no evidence to support his claim that Defendant denied his requests

21  knowing that the denial caused a substantial risk of serious harm to Plaintiff.  *See Farmer v.*

22  *Brennan*, 511 U.S. 825, 837 (1994).

23    Here, Defendant submitted evidence that she denied Plaintiff's requests because his back

24  condition did not appear to have changed from the previous time that Plaintiff requested a lower

25  bunk chrono in 2009, and was denied.  (Decl. Malo-Clines at ¶¶ 16, 23, 25.)  In addition, Dr.

26  Sayre, the Chief Medical Officer agreed with Defendant's determination that a lower bunk

27  chrono was not appropriate at that time.  (*Id.* at ¶¶ 17, 18.)  Moreover, Dr. Beisenherz from the

28  receiver's office, agreed that "[t]here are no clinical findings which indicate that [Plaintiff]

1  requires a low bunk or low tier at this time." (Plaintiff's Req. for Jud. Not., Ex. B at ¶ 13.)  He

2  continued that the CDCR's policy is to issue a lower bunk chrono for patients with specific

3  conditions and disorders -- none of which Plaintiff has.  (*Id.*)  Plaintiff has not provided any

4  evidence to the contrary.  Thus, there is an absence of evidence supporting Plaintiff's assertion

5  that Defendant was deliberately indifferent in her denials of Plaintiff's request for a lower bunk

6  chrono.  Defendant is entitled to judgment as a matter of law.

7  **CONCLUSION**

8       Defendant's motion for summary judgment is GRANTED.  Plaintiff's motion for

9  summary judgment is DENIED.  Judgment shall be entered in favor of Defendant.  The Clerk

10 shall terminate all pending motions and close the file.

11      IT IS SO ORDERED.

12 DATED: ___8/27/12___

                    *Lucy H. Koh*

13             LUCY H. KOH
            United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28